[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties have requested this court not to rule on the Motion for Summary Judgment that was calendared but to determine the applicable state law of this forum in the resolution of the issues.
The facts are not in dispute. The plaintiff, Aaron M. Scott, has brought this claim against the United States Cycling CT Page 4142 Federation (hereinafter USCF or defendant) to recover damages he allegedly sustained on June 23, 1989, as a result of being struck by a branch of a tree while participating in a bicycle race in New York State on a race course designated and maintained by the USCF. The plaintiff alleges inter alia, that USCF failed to maintain the course in a safe condition.
The defendant USCF is a New York corporation engaged in promoting and conducting bicycle races in Connecticut and throughout the United States with its principal place of business in Colorado.
On June 23, 1989, the plaintiff, Aaron M. Scott, was a registered participant in the tour of the Adirondacks bicycle race in Lake Placid, New York.
The tour of the Adirondacks race was promoted and conducted by the defendant USCF. During the course of the race in New York, the plaintiff was allegedly struck by a tree branch overhanging the race course which caused the plaintiff's injury.
The plaintiff is a domiciliary of Connecticut.
On February 13, 1989, the plaintiff allegedly signed a document (1989 Racing License Renewal Application) wherein he waived and released the defendant from any claims of negligence.
The plaintiff claims that Connecticut law is applicable. The defendant claims the substantive law of New York is applicable.
It is noteworthy that New York law permits the doctrine of assumption of risk and Connecticut has abolished the doctrine of assumption of risk as part of its adoption of its comparative negligence statute.
Both parties rely largely on the analysis of our Supreme Court in O'Connor v. O'Connor, 201 Conn. 632 (1980).
In O'Connor the court provided an extensive analysis of the traditional rule that the nature and extent of tort liability is governed by the "lex loci delecti" — the law of the place of injury.
The court, in O'Connor, determined that the "time has come for the law in this state to abandon categorical allegiance to the doctrine of the lex loci delecti in tort actions." The court called upon a case by case analysis and left for another day whether to discard lex loci entirely. CT Page 4143
The Connecticut Supreme Court did note in O'Connor that a majority of the courts that have abandoned lex loci have adopted the principles of the Restatement Second of the Conflict of Laws as representing the most comprehensive and equitably balanced approach to conflict of laws. Id., 649.
The Court held that Connecticut should also "incorporate the guidelines of the Restatement as the governing principles for those cases in which application of the doctrine of lex loci would produce an arbitrary, irrational result." Id., 650.
In view of the court's explicit inroads upon the doctrine of lex loci delecti, this court does not interpret the arbitrary and/or irrational result language as condition precedent to the invocation of the interest analysis approach of the Restatement.
In assisting us in our analysis, the court in O'Connor stated:
 Section 145 of the Restatement Second provides in subsection (1) that the "rights and liabilities of the parties with respect to an issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in 6. Id., 650-51.
 Section 6 of the Restatement, in turn, provides: "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choices of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protections of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainly, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Id.
Applying the choice of law analysis of 145 and 6 to the facts of this case involves a weighing of the relative significance of the various factors that 6 lists.
In the context of the O'Connor case, the court put greater significance on the choices of policy emphasized in 6(2)(b), (c) and (e) and de-emphasizes the considerations of CT Page 4144 6(2)(a), (d), (f) and (g). Id., 651.
The O'Connor court continues:
 For assistance in our evaluation of the policy choices set out in 145(1) and 6(2), we turn next to 145(2) of the Restatement, which establishes black-letter rules of priority to facilitate the application of the principles of 6 to tort cases. (citations omitted). Section 145(2) provides: Contacts to be taken into account in applying the principles of 6 to determine the law applicable to an issue include: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship of the parties is centered. The contacts are to be evaluated according to their relative importance with respect to the particular issue." Id., 652.
The court concludes that under 145(2) the considerations of (c) and (d) are more significant and outweigh the considerations of (a) and (b).
In 1 Restatement (Second), Conflict of Laws 145 provides:
 "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state relationship under the principles stated in 6 to the occurrence and the parties, in which event the local law of the other state will be applied." See O'Connor, supra, 652, note 14.
In balancing the respective interests of the competing states, the supreme court emphasizes that it is the significance, and not the number of 145(2) contacts that determine the outcome of the choice of law inquiry under the Restatement.
New York has interest in applying its standards of conduct to govern the liability of persons who use its roadways. But here, because of the applicability of the assumption of risk doctrine, will, in effect, preclude inquiry into whether defendant's conduct was negligent. CT Page 4145
The plaintiff, herein is a Connecticut domiciliary. The defendant's nexus to New York is similar to its nexus to any other of the states in which it is authorized to do business, including Connecticut. Connecticut also has a strong interest in assuring that the plaintiff may avail himself of the full scope of remedies for tortious conduct that the Connecticut law affords. Id., 657.
The court concludes that under 145(2) the considerations of (c) and (d) are more significant and outweigh the considerations of (a) and (b).
The court finds that, following the case by case contextual inquiry of O'Connor, that the State of Connecticut has the most significant relationship to the controversy at hand. The law of the forum — that of Connecticut — is to be applied in this matter.
MIANO, J.